LISN, Inc., Appellant,

v.

COMMERCIAL UNION INSURANCE COMPANIES et al., Appellees.

[Cite as *LISN, Inc. v. Commercial Union Ins. Cos.* (1992), 83 Ohio App.3d 625.]

Court of Appeals of Ohio,
Lorain County.

No. 91CA005258.

Decided Nov. 12, 1992.

*Michael H. Diamant*, for appellant.

*Clifford C. Masch* and *Larry C. Greathouse*, for appellees.

---

*Per Curiam.*

LISN, Inc. ("LISN") appeals the trial court's entry granting summary judgment in favor of Commercial Union Insurance Companies ("Commercial"). We affirm.

LISN's business is to remove nonfunctional and abandoned telephone switching cable and to salvage the valuable elements contained within the removed cable. Commercial and LISN entered into comprehensive general liability insurance contracts and this case involves a dispute as to whether the insurance contracts provide coverage for a claim which has been asserted against LISN.

On January 7, 1990, LISN contracted with New York Telephone Company ("NYNEX") to remove obsolete cable from a NYNEX facility in Bronx, New York. The contract between NYNEX and LISN provided the following:

"SERVICE INTERRUPTIONS

"Any services interruptions caused by the removal vendor's [LISN] activity shall be restored within one (1) hour of the interruption. All materials and tools required for the restoral shall be provided by the removal vendor.

" \* \* \*

"At the beginning of the removal operation, splicing tools for switchboard & power cable shall be on the job site at all times in the event of a working ('live') cable being accidentally cut."

Further, pursuant to the contract, LISN was required to conform with "NYNEX Central Office Installation/Removal Procedures, NIP–74160, Issue No. 1, dated June, 1987" which provides in pertinent part the following:

"3.5.1   General and Specific:

"When removal work is being performed, every effort must be made to prevent the occurrence of a service interruption.

" * * * *

"13.   Prior to beginning the removal, all equipment to be reused, refurbished or designated other than scrap shall be clearly marked with identification tags.

" * * * *

"24.   Cable mining will be done only over retired equipment segregated from working equipment.   Where the cable to be mined is in an unsegregated environment (retired and working equipment) adequate protection is required above working equipment.   The adequacy of the protection must be agreed by the O.T.C. representative.   * * * "

While LISN was removing the obsolete cable from the NYNEX facility, an employee inadvertently cut a functioning cable.   The accident happened after employees had applied hundreds of cuts to the obsolete cable and when "[t]he live cable became intertwined with the obsolete cable, and [it] was mistakenly cut."   Following the accident, NYNEX sent a letter to LISN seeking the costs which NYNEX incurred in repairing and replacing the erroneously cut cable.   LISN then demanded that Commercial defend and indemnify LISN with respect to this claim under its comprehensive general liability policy and Commercial refused coverage.

LISN filed an action, seeking among other things a declaration as to the scope of coverage provided to it by the insurance policies issued to it by Commercial. After LISN filed a partial motion for summary judgment seeking a declaration of coverage for the NYNEX claim based on the language of the insurance policy, Commercial filed a cross-motion for summary judgment.   The trial court granted Commercial's cross-motion for summary judgment[1] and specified that there was no just reason for delay.   LISN now appeals assigning three errors.

---

1.   LISN claims that the trial court granted the cross-motion for summary judgment without opinion;   however, the trial court did issue an opinion.

## Assignments of Error I and III

"I. The common pleas court erred in denying LISN's motion for summary judgment and in granting summary judgment in favor of Commercial, since the NYNEX claim falls within the policy's general coverage provisions, and none of the boilerplate exclusion provisions cited by Commercial serve to preclude coverage."

"III. The common pleas court erred in denying LISN's motion for summary judgment and in granting summary judgment in favor of Commercial; since the policy can be reasonably interpreted to provide coverage for the NYNEX claim."

With its first assignment of error, LISN contends that the trial court erred by granting Commercial's cross-motion for summary judgment instead of granting LISN's motion for summary judgment because the insurance policy can be interpreted to provide coverage for its claim. With its third assignment of error, LISN contends that there is a material issue of fact as to the intentions of the parties concerning the insurance policies. Pursuant to Civ.R. 56(C), summary judgment is proper if the trial court determines that:

"(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 471, 364 N.E.2d 267, 274; see, also, *Delker v. Ohio Edison Co.* (1989), 47 Ohio App.3d 1, 2, 546 N.E.2d 975, 976. The trial court granted Commercial's cross-motion for summary judgment because of the plain and ordinary meaning of the Commercial General Liability Form provision at Section I, 2(j)(6)[2] which provides the following:

"This insurance does not apply to:

" * * * *

"(j) 'Property damage' to:

" * * * *

"(6) That particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it."

"Your work" is defined in the insurance policy as follows:

---

2. Commercial concedes that LISN's claim for the NYNEX incident would be covered by the policy if none of the exclusions prohibited it.

"a. Work or operations performed by you or on your behalf; and

"b. Materials, parts or equipment furnished in connection with such work or operations.

" 'Your work' includes:

"a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of 'your work'; and

"b. The providing of or failure to provide warnings or instructions."

Similar to 2(j)(6) is Section VI(A)(2)(d)(iii) of the Broad Form Comprehensive General Liability Form, which excludes coverage for property damage:

"d. to that particular part of any property, not on premises owned by or rented to the insured,

" * * * *

"iii. the restoration, repair or replacement of which has been made or is necessary by reason of faulty workmanship thereon by or on behalf of the insured * * *."

■ "[I]nsurance contracts must be construed in accordance with the same rules as other written contracts." *Hybud Equip. Corp. v. Sphere Drake Ins. Co.* (1992), 64 Ohio St.3d 657, 665, 597 N.E.2d 1096, 1102. Of these rules, the most critical rule is when the intent of the parties is evident, *i.e.*, "if the language of the policy's provisions is clear and unambiguous, this court may not 'resort to construction of that language.' " *Id.*, quoting *Karabin v. State Auto. Mut. Ins. Co.* (1984), 10 Ohio St.3d 163, 167, 10 OBR 497, 499, 462 N.E.2d 403, 406. In an insurance contract the words and phrases used " 'must be given their natural and commonly accepted meaning, * * * to the end that a reasonable interpretation of the insurance contract consistent with the apparent object and plain intent of the parties may be determined. * * * ' " *Tomlinson v. Skolnik* (1989), 44 Ohio St.3d 11, 12, 540 N.E.2d 716, 718, quoting *Gomolka v. State Auto. Mut. Ins. Co.* (1982), 70 Ohio St.2d 166, 167–168, 24 O.O.3d 274, 275–276, 436 N.E.2d 1347, 1347–1348. If the insurance contract is clear and unambiguous, the issue of coverage of the policy is appropriately resolvable upon summary judgment as a matter of law. *Inland Refuse Transfer Co. v. Browning–Ferris Indus. of Ohio, Inc.* (1984), 15 Ohio St.3d 321, 322, 15 OBR 448, 448, 474 N.E.2d 271, 272.

■ Applying these rules of construction to the exclusions in Sections 2(j)(6) and VI(A)(2)(d)(iii), we conclude that LISN's claim for coverage of the NYNEX incident is excluded from the policy. LISN and Commercial both agree that provisions like 2(j)(6) and VI(A)(2)(d)(iii) are "business risk" exclusions. LISN, however, contends that the NYNEX claim is not an excludable business risk. "Business risk" exclusions are intended to exclude coverage for risks that are

inherent in performing a particular type of work. *Weedo v. Stone–E–Brick* (1979), 81 N.J. 233, 236–238, 405 A.2d 788, 790–791. The replacement or repair of faulty goods or workmanship is a business expense and not an insurable liability. *Id.,* 81 N.J. at 238, 405 A.2d at 791.

LISN's work at NYNEX was to mine the obsolete cable without disturbing the functioning cable and to identify and protect the functioning cable. NYNEX seeks recovery from LISN for the cost of repairing and replacing the functioning cables that LISN's employees incorrectly cut after the functioning cables became intertwined with the obsolete cables. Sections 2(j)(6) and VI(A)(2)(d)(iii) exclude coverage under the insurance policy for property damage that must be repaired or replaced because LISN's work was incorrectly performed on the property. When LISN failed to protect the functioning cable and cut the functioning cable, LISN's work was incorrectly performed and the damage done to the functioning cable was excluded under the plain and unambiguous provisions of Sections 2(j)(6) and VI(A)(2)(d)(iii).

There are no genuine issues of material fact and the trial court did not err in granting Commercial's cross-motion for summary judgment. The first and third assignments of error are overruled.

### Assignment of Error II

"The common pleas court erred in denying LISN's motion for summary judgment and in granting summary judgment in favor of Commercial, since, even if the policy does not clearly by its terms provide coverage for the NYNEX claim, the policy is at least ambiguous with respect to such coverage, which ambiguity, as a matter of law, must be resolved in favor of LISN."

LISN contends that in the Comprehensive General Liability Form and in the Commercial General Liability Coverage Form there are exclusion provisions with exceptions which provide coverage for the NYNEX incident; therefore, the policy is ambiguous and that ambiguity must be resolved in its favor. The exclusion from the Comprehensive General Liability Form which LISN contends provides coverage states the following:

"This insurance policy does not apply:

"a. to liability assumed by the insured under any contract or agreement except an incidental contract; but this exclusion does not apply to a warranty of fitness or quality of the named insured's products or a warranty that work performed by or on behalf of the named insured will be done in a workmanlike manner * * *."

The exclusion from the Commercial General Liability Coverage Form states the following:

"2. Exclusions

"This insurance does not apply to:

" * * * *

"b. 'Bodily injury' or 'property damage' for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

" * * * *

"(2) That the insured would have in the absence of the contract or agreement."

This precise issue has been addressed by two other Ohio courts of appeals and we agree with their reasoning and conclusions. *Akers v. Beacon Ins. Co.* (Aug. 31, 1987), Marion App. No. 9-86—16, unreported, 1987 WL 16260; *State Auto. Mut. Ins. Co. v. Fairfield Homes, Inc.* (Nov. 14, 1989), Fairfield App. No. 11-CA-89, unreported, 1989 WL 139822. Both courts of appeals held that no ambiguity was created in the policy when the policy's exclusions included an identical provision to provision (a).

"The nature of an insurance policy is not found in its exclusions. One must look first to the language of the coverage to see what provisions are made before studying that which is excluded. Comparing exclusions, * * * without giving consideration to the basic parts of the policy is to ignore its purpose, which in this case was to provide comprehensive general liability policy.

" * * * *

"The crux of this case lies in the first exclusion in paragraph (a), which standing alone appears at first to exclude itself by not applying its exclusion to a warrant of fitness or a warranty or workmanlike performance. Isolating this paragraph without considering the preceding language results in confusion, provokes a misconstruction and violates the rule that the language must be construed with all other parts of the policy.

" * * * *

"Paragraph (a) is not a grant beyond the basic coverage. It is an exclusion limited so as not to apply where damage results from an accidental occurrence in performance. The complete business exclusion is modified so as to avoid reducing the basic coverage for general liability. If a ceiling fell by reason of poor workmanship and injured a third party, general liability would apply, but there would be no coverage for contractual liability. The limited modification in paragraph (a) does not enlarge the basic coverage beyond the language of the policy." *Akers, supra.*

Both *Akers* and *Fairfield Homes* relied on the rationale applied in *Weedo:*

"But what does exclusion '(a)' mean and what is its function? As we have endeavored to make clear, the policy in question does not cover an accident of faulty workmanship but rather faulty workmanship which causes an accident. * * * Within this structure, contractual liability is excluded under the terms of exclusion '(a)'. The exception to this exclusion insures, however, that claims premised upon quasi-contract or contract by implication, such as warranty actions, will be covered. Such claims must nevertheless be otherwise cognizable under the general grant of coverage in the first instance in order to constitute a claim 'to which this insurance applies.' " *Weedo, supra,* 81 N.J. at 249, 405 A.2d at 796.

Despite decisions in other states and relying on the rationale of *Akers, Fairfield Homes* and *Weedo,* it is our opinion that there is no ambiguity in this insurance policy. The second assignment of error is overruled.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

CACIOPPO and COOK, JJ., concur.

BAIRD, P.J., dissents.

BAIRD, Presiding Judge, dissenting.

As noted in the majority opinion, it is conceded that coverage exists unless one of the exclusions provided in the policy is found to be applicable.

The majority opinion seems to base its disposition of the case upon the so-called "business risk" exclusions, which preclude recovery for damage to property because " 'your work' was incorrectly performed on it," or because of "faulty workmanship thereon." The work in this case consisted of the removal of cables; the contractor was not engaged to do any work upon the adjacent cables. Do the exclusions in question operate to deny coverage for damage to cables in the vicinity of cables that the contractor was hired to remove?

In a remarkably similar case, this court has once previously been called upon to interpret the business risk exclusions with respect to damage inflicted to property adjacent to that upon which the insured was hired to work. *Holub Iron & Steel Co. v. Machinery Equip. & Salvage Co.* (July 2, 1986), Summit App. No. 12304, unreported, 1986 WL 7762.

For the reason stated in that case, I believe that the business risk exclusions do not apply. I believe, therefore, that the summary judgment granted herein should be reversed.